Argued March 16, reversed March 30, 1915.

## PORGES *v.* JACOBS.*

(147 Pac. 396.)

**Nuisance—Measure of Damages.**

1. In an action for damages caused by keeping a livery-stable, alleged to be a nuisance, the measure of damages was the depreciation in the rental value of the plaintiff's property, plus compensation for discomfort, annoyance and injury to health, caused plaintiff by the nuisance, and the admission of testimony as to depreciation in the market value of plaintiff's property was improper.

**Evidence—Facts or Conclusions—Opinion Evidence.**

2. In an action for damages, caused by an alleged nuisance, a livery-stable, testimony of a witness, so framed as to state that the stable was a nuisance, was improperly admitted, since it stated conclusions drawn from facts, and hence usurped the legitimate function of the jury.

**Nuisance—Absence of Negligence or Malice—"Nuisance Per Se."**

3. A stable is not a "nuisance *per se,*" and every property owner has the right to maintain one, even in a city, unless the condition of the particular stable, caused by defendant's negligence, is such as to render it a nuisance.

> [As to livery-stables, whether and when constitute nuisances, see note in 32 Am. Rep. 141. As to equitable relief against stable as nuisance, see note in Ann. Cas. 1913B, 894.]

**Nuisance—Abatement—Statute.**

4. Although there is no prayer for abatement of a nuisance in the complaint in an action for damages alleged to have been caused by it, nevertheless, under Section 341, L. O. L., providing that, if judgment be given for the plaintiff in an action for damages caused by a nuisance, he may have an order allowing a warrant to the sheriff to abate such a nuisance, where the plaintiff recovered such damages, the issuance of such warrant was proper.

From Multnomah: HENRY E. MCGINN, Judge.

---

*The question of livery-stables as nuisances is discussed in notes in 17 L. R. A. (N. S.) 1025 and 49 L. R. A. (N. S.) 958.

REPORTER.

Department 1.    Statement by MR. JUSTICE MCBRIDE.

This is an action by Alice C. Porges against Walter E. Jacobs to recover damages for an alleged nuisance.

The following statement taken from plaintiff's brief correctly states the issues:

"Paragraph 1 of plaintiff's complaint in effect alleges: That the City of Portland, in Multnomah County, State of Oregon, is an incorporated city, and that more than ten years prior hereto there was platted and recorded in the clerk's office of said county and state a residence district designated as 'Crozier's Addition to East Portland,' and also a residence district on the west side thereof and abutting thereon, designated as 'Sunnyside Addition to East Portland.' This paragraph is admitted by the answer. Paragraph 2 of the plaintiff's complaint in effect alleges: That the plaintiff for about eight years last past has been and now is the owner and in the possession of all of the following described real property, situate in the said City of Portland, to wit: All of the west 33⅓ feet of lot 1, in block 3, in said Crozier's Addition, having a frontage of 33⅓ feet on East Alder Street and extending back southwardly, along East Thirty-fifth Street on the easterly side thereof 100 feet; the said Thirty-fifth street having a width of 20 feet as shown by the recorded plat thereof. This paragraph is admitted by the answer. Paragraph 3 of plaintiff's complaint in effect alleges: That on or about eight years prior hereto plaintiff constructed and erected two dwelling-houses on said lot, one fronting on East Alder Street, and the other upon the rear end of said lot and fronting on East Thirty-fifth Street. The first-mentioned house she leased, and the second-mentioned house she used and occupied with her family as a residence, and said property was of the reasonable value of $8,000. Defendant admits by his answer that plaintiff occupies a dwelling-house at the corner of East Thirty-fifth and Alder Streets, and denies the other allegations of said paragraph. Paragraph 4 of plaintiff's complaint in effect alleges: That the defendant

for the three years last past has been and now is the owner of all of lot 11, and the north 80 feet of lots 14 and 15, in block 9, in Sunnyside Addition to East Portland. That said real property is bounded on the north by East Alder Street, and on the east by East Thirty-fifth Street, 20 feet in width. That said defendant during the said last three years has been in the possession of said real property, and has during said time constructed, erected, and maintained thereon, and now operates and maintains thereon, a frame barn or stable, which occupies the whole of said real property, and in which he has at all of the dates and times hereinbefore mentioned kept and maintained and does now keep and maintain, about 25 horses, both night and day, together with wagons, carts, harness, and other paraphernalia. This paragraph is admitted by defendant's answer. Paragraph 5 of plaintiff's complaint in effect alleges: That the plaintiff purchased her property, erected her said dwelling-houses thereon, and established her home thereon, upon the understanding and belief that Crozier's Addition and said Sunnyside Addition to East Portland were to be residence districts, and the same ever since have been and now are residence districts solely. This paragraph of plaintiff's complaint is denied by defendant's answer, upon information and belief. Paragraph 6 of plaintiff's complaint in effect alleges: That a foul odor or stench is constantly thrown out from said stable and across said East Thirty-fifth Street, into the dwelling-house and home of plaintiff, rendering the same at certain times uninhabitable, and at all times unpleasant for plaintiff and her family. That the great number of horses kept and maintained in said stable during the night-time keep up a constant stamping and moving about therein, so that plaintiff and her family are disturbed thereby and are unable to sleep. That at certain times swarms of flies and noxious vermin, such as mice and rats, are attracted and drawn thereby, and in consequence thereof overrun the premises of plaintiff, to her great discomfort and annoyance. The health of plaintiff is menaced thereby. The property of plaintiff has been thereby and now

is thereby greatly injured and depreciated in value, by reason thereof plaintiff was and is greatly injured in health, suffered great mental pain and anguish, became nervously prostrated, and unable to perform her usual and necessary household duties, all to her damage in the sum of $5,000. This paragraph of plaintiff's complaint is denied by defendant's answer. The case came on to be tried before a jury upon the issues made by the pleadings, and after hearing the testimony of the respective parties, and after viewing the premises, the said jury found for the plaintiff and against the defendant, and assessed her damages at the sum of $1.''

Thereafter plaintiff, in pursuance of Section 341, L. O. L., moved for the issuance of a warrant to abate the nuisance, which was allowed. Plaintiff appealed from the judgment and order above mentioned. Upon the trial the plaintiff was permitted to testify over defendant's objection, as to depreciation in the market value of her property, to which ruling the defendant excepted. W. W. Graves, another witness for plaintiff, testified over the objection of defendant, as follows:

''Q. What do you know about this stable, Mr. Graves?

''A. Well, the stable there is a detriment to my property; I know that.

''Q. Why?

''A. Well, just as any livery-stable would be—the old barn was there—

''Mr. Everson: We object to his conclusion. The jury is here to draw their own conclusions.

''The Witness: That may be true.

''Mr. Grant: Let us argue the case; you may testify.

''The Witness: That has all been gone over, anyhow.

''The Court: Well, he gives an opinion, and we are here to get at the facts, and if you can get at that ac-

cording to the rules of evidence, all right, but, if not, only by setting the rules aside, let us do that. I will overrule the objection. (Exception allowed.)

"Q. Go on.

"A. Well, when I bought that property there, there was a red barn there, and I figured that it was going to be a private stable; but this other stable just grew up, and he kept adding a little and a little to it, with the intention of putting up a larger stable, and it turned into a general livery-stable after while; and in the last few weeks, or a month, it grew very rapidly. He just put it up in a hurry, had a lot of men there, and he ran it up in a hurry to keep from being enjoined. Of course, it had been kept cleaner and nicer in the last few months than it ever was before. Heretofore the stable has been a nuisance, more than it is now."

The defendant's counsel asked, among others, the following instruction, which was refused:

"The maintenance and operation of a livery-stable in the city is not unlawful. A stable is not a nuisance *per se,* or of itself; and, if it is not in fact a nuisance, any person has a perfect right to maintain one in the city. Every man is entitled to use his land in the ordinary and natural way, and if this use and enjoyment, without negligence or malice, and in the absence of conditions creating a nuisance, causes unavoidable injury to his neighbor, there is no legal wrong. If the stable of defendant is not in fact a nuisance, and defendant has not been guilty of malice or negligence, then you cannot find for the plaintiff." Reversed.

For appellant there was a brief over the names of *Mr. Frank S. Grant* and *Mr. Fred L. Everson,* with an oral argument by *Mr. Grant.*

For respondent there was a brief and an oral argument by *Mr. Henry J. Bigger.*

MR. JUSTICE McBRIDE delivered the opinion of the court.

1. The court erred in admitting testimony as to the depreciation in the market value of plaintiff's property caused by the alleged nuisance. The reason why such evidence is inadmissible in cases of this kind is that the alleged nuisance is temporary and can be abated. When cause for depreciation is removed, the market value is restored to its normal figure. The true measure of damages is the depreciation in the rental value, plus compensation for the discomfort and annoyance or injury to health which plaintiff has suffered by the existence of the nuisance: *Baltimore & Potomac R. Co.* v. *Fifth Baptist Church,* 108 U. S. 317 (27 L. Ed. 739, 2 Sup. Ct. Rep. 719) ; Joyce on Nuisances, § 490; *Stroth Brewing Co.* v. *Schmitt,* 25 Ohio C. C. Rep. 231; *Shirely* v. *Cedar Rapids etc. R. Co.,* 74 Iowa, 169 (37 N. W. 133, 7 Am. St. Rep. 471) ; *Van Veghten* v. *Hudson River etc. Co.,* 103 App. Div. 130 (92 N. Y. Supp. 956) ; *Gerow* v. *Village of Liberty,* 106 App. Div. 357 (94 N. Y. Supp. 949) ; *Cane Belt R. Co.* v. *Ridgeway,* 38 Tex. Civ. App. 108 (85 S. W. 496). As the jury returned a verdict for only $1 damages, it is apparent that they did not seriously consider plaintiff's testimony as to the depreciation in value of the property, and the error was probably harmless. We call attention to it here for the reason that as there must in any event be a retrial of the case the error may be evaded hereafter.

2. The court erred in admitting the testimony of the witness Graves. The ultimate conclusion to be found by the jury was whether the conditions under which defendant's stable was maintained constituted in law a nuisance. Evidence as to the production by it of foul odors thrown out and exhaled, of the great num-

ber of horses stabled in it, so that they kept the occupants of plaintiff's building awake at night, and of its breeding flies and being the headquarters for mice and rats, which overflowed into plaintiff's premises, was competent to enable the jury under the instructions of the court to determine the ultimate fact as to whether a nuisance existed; but the witness should not have been allowed to give his opinion upon such ultimate conclusion, which, to say the least, is a mixed question of law and fact, to be determined by the jury under the direction of the court as to the law   The admission of such testimony would justify a court, in a case where a witness had been present at a homicide, in allowing him to say:

"I was present at the killing.   The defendant committed manslaughter."

Opinion evidence is rarely admissible, except in certain cases, where the statute makes it so; as in criminal cases in this state, where the defense is that of insanity, and an intimate acquaintance of the prisoner is permitted to express his opinion as to the prisoner's sanity, or where the testimony of an expert in some particular trade, profession, or calling is necessary to inform the jury upon matters of which the average person is presumed to be ignorant: 1 Thompson, Trials, § 377 et seq., Jones, Evidence (2 ed.) § 359.

3. The defendant alleges as error the failure of the court to give certain requested instructions; but, with the exception of the one quoted in the statement of the case, all are fairly covered by the general charge. The request quoted should have been given: Joyce, Law of Nuisance, § 200.

4. The objection that the issuance of the warrant of abatement was improper, because there is no prayer

for abatement in the complaint, is not well taken: *Rutenic* v. *Hamaker,* 40 Or. 444, 457 (67 Pac. 192).

The judgment of the Circuit Court will be reversed, and the cause remanded to the Circuit Court for a new trial.                                                    REVERSED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BENSON and MR. JUSTICE BURNETT concur.